____ FILED ____ ENTERED
____ LOGGED ____ RECEIVED

DEC 2 7 2013

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

ROBERT DEWAIN VENSON   *   Civil Case No. AW-13-cv-1683
  *   CrimlCase No. AW-09-0088
v.   *
  *
******

UNITED STATES OF AMERICA

# MEMORANDUM OPINION

Before the Court is a Motion/Petition to Vacate filed by the Petitioner/Defendant, Robert Dewain Venson for relief pursuant to 18 U.S.C. § 2255. On February 23, 2009 a Federal Grand Jury for the District of Maryland charged Petitioner with eight counts of wire fraud, eight counts of mail fraud, seven counts of promotion money laundering, and three counts of failure to file income tax returns. The Petitioner entered a not guilty plea and the matter came on for trial commencing June 8, 2010. Following nine days of trial, Petitioner was convicted on all counts. The Court appointed what would be a third counsel to represent Petitioner at sentencing which occurred on January 19, 2011. At the sentencing, Petitioner's counsel presented numerous objections and arguments on behalf of Petitioner. The Court made its findings with respect to the contested issues and determined the advisory guideline range to be 135-168 months. Ultimately, the Court varied from the guideline range and sentenced Petitioner to 120 months, and ordered restitution and forfeiture as determined. Petitioner appealed his conviction and sentence. In an unpublished opinion *United States v. Venson*- (Case No. 11-4132--4[th] Circuit June 6, 2011), the Fourth Circuit affirmed the Petitioner's judgment. Petitioner's counsel withdrew after the decision by the Fourth Circuit. Petitioner, on his own, petitioned the Fourth

Circuit for rehearing, *en banc*. The Fourth Circuit denied Petitioner's motion for a rehearing on January 4, 2013. In his Motion, Petitioner presents some nine (9) grounds in support of a claim of ineffective assistance of counsel. In his amended Motion, he adds a tenth ground arguing that a recent Supreme Court case prohibiting any enhancements not determined by a jury applies to his case and warrants §2255 relief. This Motion to vacate (including his amended Motion — adding an additional ground) was timely filed and the Government has responded. The Motion is now ripe for consideration.

The Court presided over this nine day trial and remembers it well. It may be helpful for the Court to recap some of its factual determinations and comments the Court made in its written Memorandum Opinion issued on January 25, 2011, in connection with the sentencing:

> Essentially, the Defendant unlawfully extracted and distilled inflated equity out of the real estate properties involved in this case. The lenders loaned more money than the properties were worth, and the Defendant took cash out and had the cash paid to either Immanuel, LLC or Compassionate Real Estate Company. The evidence further reflected that after negotiating for one price on the properties with the sellers, the Defendant caused the HUD I and other paperwork to reflect an increased sales price. In most of the transactions, the Defendant also used a straw buyer (undisclosed to the sellers) to actually purchase the property. Directed by Defendant, the straw purchaser was to meet or contact a loan officer, one of whom was Rasheeda Canty, a co-conspirator who "doctored up" the financial application of the straw buyer by inventing job titles; fraudulently misrepresented the salaries of the straw-buyer (stated incomes were represented in some instances as $9,000-$12,000 per month); and sent "bogus" letters about the relocation of a straw buyer's job and a "bogus" letter verifying rental payments. All of these representations were lies. Some straw buyers were told to make sure they stated that they were going to live on the property, a blatant misrepresentation. Most of the straw-buyers were then told to just show up at settlement and sign paperwork—which included signing documents agreeing to payment of the inflated equity to Compassion Real Estate and Immanuel based upon what appeared to be the submission of "phony" repair or rehab invoices. Several of the straw-buyers testified that they never really read what they signed nor did they pay much or any attention to the documents. Following the settlement and often in a car outside the settlement office, the straw buyers were paid a fee anywhere from $2,000 to $6,000 for the use of their name and their credit.
>
> The Court recalled the testimony of a couple of owners of properties on the Eastern Shore of Maryland who testified that they were delinquent in their mortgage payments and were on the verge of foreclosure of their properties, largely because the balloon payments had kicked in. These witnesses were Lawrence Deal, Carolyn Deal, and Dyna Blakley. Blakley testified that her father left her the property and that she had been initially contacted by the Defendant's

2

associate, Shante Camper. Blakley further testified that Camper told her that he (Camper) knew someone interested in buying their property. It is clear from the evidence that the defendant saw an opportunity to make some money on these property owners who were in a distressed situation.

With respect to the straw buyers, the evidence established that the Defendant misrepresented the true situation/relationship he was to have with the straw buyers. He told several of the straw buyers that they could make some money on real estate investments—advising them that all they had to do was put their name on the deed for a year and the Defendant would then have their names taken off. These straw buyers were then paid a fee out of the inflated equity paid to Compassion Real Estate Company or Immauel, LLC. The Court recalled that one of the straw buyers (Rubin Garvin) testified that he had been drawn into this situation by the Defendant and testified that he was upset that he had to come to court to testify and subject himself to cross examination as to personal matters involving his mother's house and her financial situation. After a while on the stand Mr. Garvin became visibly upset and was about to "lose it" but he asked for a recess from testifying on the stand, which the Court granted. Several straw buyers testified that after making a few payments, the Defendant stopped paying on the mortgage notes which resulted in collection calls by the particular mortgage lenders. Ultimately, the evidence established that the properties were lost to foreclosures and the straw buyers ended up with bad credit.

To summarize, the Court believes that with respect to this case, the evidence before the jury reflects that the Defendant was the driving force behind this scheme. The Defendant found sellers to whom he wished to make purchase offers; the Defendant caused the paperwork drafted to reflect a different and higher sales price, and the Defendant (knowing that he himself could not qualify for any or all of these loans and recruited straw buyers). The Defendant lied to the straw buyers about their status/legal relationship with the property. The evidence further reflected that the Defendant then put the straw buyers in contact with "crooked" loan officers/brokers, told the straw buyers what to say and after the settlement the Defendant then paid the straw buyers for the use of their names and credit. Finally, the evidence reflected that the Defendant (via his two companies which he controlled) then took most of the money proceeds from this scheme and eventually was responsible for the property going into foreclosure as he stopped paying the mortgage payments. Clearly, there was a mound of evidence to support the jury's decision finding the Defendant guilty of wire fraud, mail fraud, money laundering, and willful failure to pay taxes for years 2004, 2005, and 2006.

Considering this background aside, the Court now proceeds to consider the ten grounds presented by the Petitioner in his Motion and Amended Motion. With respect to the claims by Petitioner that his counsel was ineffective, the Court reviews his allegations under the well-established standard set forth in *Strickland v. Washington* 466 U.S. 668, 687 (1984), under which a claimant must establish the two prong standard of deficient performance and prejudice. In other words, in order to succeed on his claim of ineffective assistance of counsel, Petitioner must

show that his counsel's performance was deficient in that counsel made errors so serious that he ceased to function as counsel within the meaning of the Sixth Amendment, and that the alleged deficient performance prejudiced the defense. Id. First, the Petitioner must show that counsel's representation "fell below an objective standard or reasonableness", as measured by prevailing professional norms. *Strickland*, 466 at 688. Courts should be deferential in this inquiry, and have "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id at 689. The Petitioner must, therefore, overcome the presumption that the representation "might be considered sound trial strategy." Second, Petitioner must demonstrate that counsel's inadequate performance prejudiced him. Id at 687. Here, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 at 694. A reasonable probability, in turn, is defined as "a probability sufficient to undermine confidence in the outcome." In cases where a conviction has been the result of a trial, Petitioner must demonstrate that but for counsel's errors, there is a reasonable probability that he would not have been convicted. With these legal principles in mind, the Court now turns to Petitioner's grounds.

Petitioner argues in grounds one, two, three and nine that his sentencing counsel (who also represented him on appeal) rendered ineffective assistance of counsel. In ground one, the argument is that counsel failed to object or challenge the Government's loss amount calculations. In ground two, Petitioner submits that counsel failed to argue that the Government's restitution amount [they sought] was incomplete and inaccurate. In ground three, Petitioner contends that counsel failed to argue against the [two level] enhancement for "sophisticated means." And in ground nine, Petitioner avers that counsel was ineffective in failing to object to the leadership role enhancement—an enhancement Petitioner claims was unfair and unwarranted. The Court agrees with the Government that these four grounds lodged against the sentencing counsel are

4

devoid of merit. Contrary to Petitioner's contentions that his sentencing counsel did not challenge or oppose the issues set forth in grounds claims one, two, and nine, the record and sentencing transcript belie such claims. Sentencing counsel filed a sentencing memorandum which challenged the loss and restitution amounts, extensively cross examined the Government's witness who provided testimony on the loss and amount, and [following the testimony of the witness with respect to the loss] counsel argued against the loss amount and the restitution claim the Government sought. Moreover, on page 21 of the Sentencing Transcript, the Court, specifically, noted that the defense had not consented to the role enhancement and the Court proceeded to make specific findings that Petitioner was in control of the overall scheme and clearly was an organizer or leader within the meaning of the guideline enhancement. Petitioner also raised the issue as to the loss amount and the restitution amount on appeal. In its decision and unwritten opinion, the Fourth Circuit found that the loss amount determined by this Court was proper and that Petitioner's challenge to the calculation of loss for restitution lacked merit.

Finally, although sentencing counsel did not specifically raise an objection to the enhancement for sophistication, the Court in its comments at sentencing addressed this issue: "This was a pretty elaborate scheme, with a number of straw purchasers and a number of shell and other corporations that paid and bought the property and so forth. So certainly, the sophistication was there." See sentencing transcript, page 21. The Court, therefore, concludes that there is no basis to conclude that sentencing counsel's conduct was derelict or lacking. In fact, sentencing counsel raised and challenged the issues set forth in claims one, two and nine. Any failure of counsel to, specifically, challenge the sophistication means (claim three), clearly was futile when viewing the evidence and circumstances surrounding the offenses for which Petitioner was convicted. At any rate, there is absolutely no prejudice sustained or presented by Petitioner as there was more than sufficient evidence presented at the nine day trial to support

both a role enhancement and the enhancement for sophistication. Grounds one, two, three and nine are denied.

In ground four, Petitioner claims that his appellate counsel was ineffective in failing to request that the Fourth Circuit rehear his appeal, *en banc*. Preliminarily, this ground can be denied as Petitioner was not entitled to counsel for additional discretional requests once the Fourth Circuit rendered its decision. Appellate counsel had a right and an obligation to professionally evaluate the merits of any further appellate review and [if counsel felt it appropriate] to withdraw from further appeal efforts. That is what occurred in this case, and the Court finds no breach in performance. Additionally, Petitioner himself filed a petition for a rehearing, *en banc*, which was subsequently denied by the Fourth Circuit. Ground four also must be denied.

Petitioner next presents four grounds (five, six, seven and eight) against his trial counsel which he argues amount to ineffective assistance of counsel. In ground five, Petitioner contends that trial counsel failed to secure a disclosure of the required Jenks Act material, and that trial counsel was derelict in withdrawing two motions to compel discovery. In its response, the Government attaches a seven-page affidavit from trial counsel which specifically addresses each of the four grounds asserted against trial counsel. Beyond the general statement in his §2255 Motion, Petitioner does not refute the responses and representations by trial counsel in his affidavit. The docket reflects that trial counsel filed two pre-trial discovery motions [to compel] and, subsequently, withdrew them once he was in receipt of the Government's responses to the motions and to what trial counsel believed was the Government's full disclosure of *Jenk's* material. The decision to withdraw the motions together with the absence of any evidence or indication that counsel did not timely receive the *Jenk's* material does not suggest nor contain any trappings of a performance deficiency. Neither has Petitioner shown any prejudice

6

associated with this ground. In ground six, Petitioner alleges that trial counsel failed to adequately prepare for trial. Petitioner then says that some of the numerous failures by trial counsel included: a failure to use expert testimony, a failure to use witnesses, a failure to secure prosecution evidence and/or statements, and the fact that counsel met with movant just for five (5) minutes via telephone to prepare for trial.

In a five-page response to this ground, trial counsel in his affidavit sets forth [in great detail] the many hours of work and effort on behalf of Petitioner, and the long hours of trial preparation in this case. See Government's response (Exhibit 1 pages 2-6). Trial counsel represented with specificity that: he consulted with experts on numerous occasions; he put in over 100 hours reviewing records and government disclosures; he engaged in legal research, prepared numerous motions, and submitted many pleadings; he interviewed witnesses, assessed their value and [as part of counsel's trial strategy] decided against calling any witnesses; and he expended some 51 hours meeting with Petitioner approximately 20 times, speaking with him by phone 17 times, and emailing him on several occasions. Petitioner does not refute any of this, and the docket lends support for trial many of counsel's representations. As *Stricken* instructs, trial counsel's decisions and trial strategy, in particularly, are entitled to deference absent something specific to overcome the presumption of deference. Petitioner has not presented or made any showing for this Court to second guess counsel. The Court is absolutely satisfied [after reviewing the entire record] that trial counsel adequately prepared for trial. The Court determines that beyond his bald allegation, Petitioner has failed to make any showing that trial counsel was derelict in preparing for trial. Nor is there anything in the record to support any finding of resulting prejudice on account of any claimed lack of preparation for trial. Ground six is denied.

In ground seven, Petitioner alleges that trial counsel provided ineffective assistance of

7

counsel during the plea negotiation process by providing Petitioner with a defective sentencing range. Petitioner claims that trial counsel informed him that if he was found guilty, Petitioner would face a sentence of 5 to 6 years, which, according to Petitioner, was not a reasonable estimate consistent with the federal sentencing guidelines. Again, the Government points to the detailed affidavit by trial counsel averring that Petitioner never authorized any plea discussions. Trial counsel acknowledges that he received a letter from the Government analyzing the applicable guideline range should the parties enter into any plea negotiations. Trial counsel shared the contents of the letter with Petitioner and expressed his opinion that with a consummated successful plea agreement the range would be from 37 months to 51 (3 to 4 and a half years) but that if Petitioner went to trial and was convicted Petitioner's sentence could well be in the range of 6 to 10 years or higher. The Court finds both estimates by trial counsel to be reasonably accurate and not terribly off base from the 6 year estimate Petitioner alleges he was given if he went to trial. The Court does not believe that there has been any performance deficiency with reference to the alleged representations surrounding the sentencing range.

Trial counsel also advised in his affidavit that Petitioner consistently indicated that he (Petitioner) had no interest in plea negotiations. The ultimate sentence Petitioner received from the Court [after the Court varied from the guideline range of 135-168] was 120 months (10 years) and within the range trial counsel indicated he estimated should Petitioner be convicted. In *Lafler v. Cooper*, 132 S. Ct 1376 (2012), the Supreme Court defined what is required to establish the prejudice prong of an ineffective assistance of counsel claim in the plea bargaining context. The Court held that "prejudice occurs when, absent deficient advice, the defendant would have accepted a plea that would have been accepted by the court, and that 'the conviction or sentence, or both, under the terms would have been less severe than under the judgment and sentence that in fact were imposed.'" *United States v. Ray*, 2013 WL 6354145, at *2 (4th Cir.

8

Dec. 16, 2013) quoting *Lafler,* 132 S. Ct at 1385). In *Missori v. Frye,* 132 S. Ct 1399, 1409 (2012), decided the same day as *Lafler,* the Supreme Court clarified that "[t]o show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." Nowhere in his Motion does Petitioner indicate that he would have pled guilty had he been told something different than the range he allegedly was given. Petitioner has not refuted nor denied trial counsel's statement in the affidavit that Petitioner was not interested in plea negotiations. The Court, therefore, concludes that Petitioner has not made a sufficient showing that trial counsel's advice with respect to sentencing options was constitutionally deficient or defective nor (in light of Petitioner's lack of interest in plea negotiations) has Petitioner shown any prejudice with respect to the opinion range provided by trial counsel. Ground seven is denied.

In ground eight, Petitioner again presents another general allegation that trial counsel provided ineffective assistance of counsel by utilizing a defective trial strategy instead of properly preparing for trial. There are no specifics beyond Petitioner's comment that trial "counsel, merely, requested a mistrial indicating that the Government did not prove their point." The Court has essentially addressed this ground when it denied Petitioner's ground six. Similar to Petitioner's assertions in ground six (that trial counsel rendered ineffective assistance of counsel by failing to adequately prepare for trial), the claim by Petitioner in ground eight (that trial counsel utilized a defective trial strategy) is but a bald allegation, bereft of any specific or meaningful argument. Ground eight is denied.

Finally, in ground ten (which was added in the amended Motion), Petitioner asserts that a recent Supreme Court decision held that any enhancements not decided by a jury during trial

(loss amount, number of victims, leadership role, etc.) violate his Sixth Amendment rights. Petitioner does not provide the Court with any case or citation of a case dispositive of his ground and the Court elects not to guess as to what case Petitioner relies. The Court will, however, mention in passing that the enhancements applied in this case were not elements of the offenses (i.e drug amounts) and did not increase the mandatory minimum-sentence. The enhancements in this case, merely, affected and determined the advisory guideline range. Not having increased the mandatory-minimum sentence, there was no requirement that the enhancement issues determined by the Court in this case to have been submitted to a jury.

In sum, the Court has reviewed the current pleadings and the entire files relative to the present motion as well as the underlying criminal case. The Court concludes that Petitioner has failed to demonstrate a legal and cognizable basis for relief. Accordingly, the Petitioner's motion pursuant to § 2255 is DENIED.

### A Certificate of Appealability

There is no absolute entitlement to appeal a district court's denial of the Motion. See 28 U.S.C. § 2253 (c) (1) "A [Certificate of Appealability, or COA]" may issue only if the applicant has made a substantial showing of the denial of a constitutional right. *Id* at § 2253 (c) (2). To meet this burden an applicant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983). Here the Court had concluded that Petitioner's alleged ten grounds which he has set forth under his Motion and Amended Motion do not support his claim for ineffective assistance of counsel. It is the Court's view that Petitioner has raised no arguments which causes this Court to view the issues as debatable, or finds that the issues could have been resolved differently, or to conclude

10

that the issues raise questions which warrant further review. Accordingly, the Court denies a Certificate of Appealability.

A separate Order will be issued.

Date: December 27, 2013

                                                  /s/
                                      Alexander Williams, Jr.
                                      United States District Judge